**LTV AEROSPACE CORPORATION, Appellant,**

v.

**C. C. BATEMAN, dba Bateman Construction Company, Appellee.**

**No. 680.**

Court of Civil Appeals of Texas, Tyler.

March 8, 1973.

Rehearing Denied April 5, 1973.

William L. Neary and David Ives, Dallas, for appellant.

Ben E. Jarvis and James R. Lewis, Tyler, for appellee.

McKAY, Justice.

Appellee Bateman sued appellant for breach of contract and sought recovery for lost profits, and alternatively, for damages for unrecoverable costs resulting from breach of contract by appellant. Trial was with a jury, and the court, disregarding some issues, rendered judgment for appellee for $25,000 for lost profits.

In the Fall of 1969 appellant established a plant in Tyler, Texas, for the manufacture of all-terrain vehicles. A substantial portion of these vehicles were to be exported to Southeast Asia and therefore export shipping crates or containers were required. In December, 1969, appellant circulated a detailed invitation to bid so as to find a local supplier who could manufacture the shipping containers or crates to specifications and in quantities to 8,000 containers. The containers were to be de-

livered on a periodic basis to be specified by appellant to fit its production schedule.

Appellee in December, 1969, received from a third party a copy of the invitation to bid, and later in that month submitted a detailed written bid to appellant. Negotiations between appellee and representatives of appellant followed and after some oral changes on both specifications and price an agreement was reached and the bid was accepted by appellant. The exact terms of the agreement were disputed at the trial.

Appellee in January, 1970, employed workmen, purchased raw materials, plant equipment and facilities and began building shipping containers or crates, the first being delivered about January 20, 1970.

In March, 1970, appellee received a written purchase order from appellant, dated January 7, 1970, requesting delivery of 900 containers of the type and at the price previously agreed. Some crates had already been delivered and accepted by appellant before the purchase order was received by appellee about March 17, 1970.

In September, 1970, appellee received an amended or revised purchase order changing and reducing the quantity of containers from 900 to 653, the number 653 being the number of containers which had already been delivered and paid for. The new purchase order also requested production of 450 container bottoms only at a price then specially agreed upon. These bottoms were manufactured, delivered and paid for.

No additional containers or bottoms were ordered or built, and appellant's Tyler plant subsequently ceased operations.

The record shows that appellant did not sign appellee's written bid, which was amended and later orally changed, and appellee did not sign either of appellant's purchase orders.

By the first three points appellant complains that, by reason of the Statute of Frauds, the trial court erred (1) by overruling its motion to strike the evidence concerning the oral contract for 8,000 containers; (2) by submitting issues Nos. 1, 2, 4, 6 and 7 [1] because the agreement inquired

1. "SPECIAL ISSUE NO. ONE: Do you find from a preponderance of the evidence that by submitting to Defendant his bid or series of quotations dated December 22, 1969, Plaintiff's Exhibit No. 5, as amended by Plaintiff's letter of January 7, 1970, Plaintiff's Exhibit 6, the Plaintiff intended thereby to make a firm offer to Defendant, good for ninety days, to manufacture and deliver to Defendant within one year from acceptance, if any, by Defendant, a total of 8,000 shipping crates as in said bid described and as amended by said letter of January 7, 1970?

Answer 'We do' or 'We do not'.
ANSWER: We do.
SPECIAL ISSUE NO. TWO: Do you find from a preponderance of the evidence that Defendant, within the time allowed by the terms of Plaintiff's offer, if any, did agree to and accept Plaintiff's bid for 8,000 shipping crates, dated December 22, 1969, as amended by Plaintiff's said letter of January 7, 1970?

In this connection, you are instructed that in answering this Special Issue, acceptance of such offer, if any, by Defendant may have been verbal, in writing, or

492 S.W.2d—45

by conduct, or by a combination of such means, if any.
Answer 'We do' or 'We do not'.
ANSWER: We do.
SPECIAL ISSUE NO. FOUR: Do you find from a preponderance of the evidence that insofar as Defendant permitted him to do so, Plaintiff did perform his obligations under his contract with Defendant for the production and delivery of shipping crates of the type agreed upon by the parties?
Answer 'We do' or 'We do not'.
ANSWER: We do.
SPECIAL ISSUE NO. SIX: Do you find from a preponderance of the evidence that except for the action, if any, on the part of the Defendant in giving to Plaintiff the written notice dated September 21, 1970, Defendant's Exhibit No. 17, to the effect that Defendant would not accept from Plaintiff any shipping crates in addition to the 653 crates already accepted, Plaintiff would have been willing and able fully and timely to perform his entire obligation to Defendant under the contract for the 8,000 shipping crates?
Answer 'We do' or 'We do not'.
ANSWER: We do.

about is unenforceable; and (3) by not disregarding jury answers to issues 1, 2, 4, 6 and 7 for the same reason.

The applicable statute involved here is found in Texas Business and Commerce Code, Uniform Commercial Code, sec. 2.-201, V.T.C.A., which reads, in part, as follows:

"(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

\* \* \* \* \* \*

"(c) A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable

(1) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(2) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; \* \* \*".

■ The contract which appellee seeks to enforce involves sale and purchase of shipping containers of the value of substantially more than $500. Appellant did not sign appellee's written bid. Therefore, it must be determined whether the contract here is governed by Subsection (c)(1) of sec. 2.201, UCC, as specially manufactured goods for appellant and not suitable for sale to others in the ordinary course of appellee's business. We hold that the contract is so governed.

These shipping crates or containers were manufactured by appellee to detailed specifications required by appellant, and they were to be used for shipping overseas an all-terrain vehicle manufactured by appellant. They were not suitable for sale to others in the ordinary course of appellee's business. The record discloses that appellee had made a substantial beginning in manufacture of the goods, and it was done for appellant's benefit before any notice of repudiation was given or received. The contract was not rendered unenforceable by the statute because it falls under an ex-

SPECIAL ISSUE NO. SEVEN: From a preponderance of the evidence, what do you find to be the reasonable cash value, if any, of the lost profits, if any, that Plaintiff would, in reasonable probability, have made on the contract if Plaintiff had been allowed to complete performance under the contract for the 8,000 shipping crates?

Answer the amount of money, if any.

We, the Jury, find $25,000.00

In answering this Special Issue, you are instructed that you may determine the cash value, if any, of the lost profits, if any, inquired about by determining the total amount of money, if any, Plaintiff would have been entitled to receive upon completion of the contract in question, and subtracting therefrom the amount of money Plaintiff received for the 653 shipping crates at $52.06 per unit, and then diminishing that remainder by the total amount of money which Plaintiff would, in reasonable probility, (sic) have had to expend in producing the remaining 7,347 shipping crates. The probable cost of completing the work may be established from proof of the value of the material, labor and overhead required. The reasonable value of the contractor's time which he would have used in carrying out the terms and provisions is to be deducted from the recovery."

ception under which the statute of frauds need not be complied with. Appellant's first three points are overruled. Rose Acre Farms, Inc. v. L. P. Cavett Co. of Indiana, 279 N.E.2d 280 (Ind.App. 1st Dist., 1972); 1 Anderson, Uniform Comm.Code, sec. 2–201.46; Ann. Statute of Frauds—Manufactured Goods, 25 A.L.R.2d 692.

■ Appellant claims that there is a writing which satisfies the requirements of subsection (a), and that it is the purchase order, and therefore subsection (c)(1) cannot apply. Subsection (a) requires "some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought * * *.*" Emphasis ours. The issuing of a purchase order for 900 crates or containers, unsigned by appellee against whom it is sought to be enforced, is not such a writing as will satisfy subsection (a).

■ By points four through six appellant contends that it was error to base judgment on Special Issue No. 7 because, as a matter of law, appellee's damages are limited to actual out-of-pocket damages, and there was no finding by the jury of actual out-of-pocket damages; and that Special Issue No. 22 [2] was conclusive as to the measure of damages. Appellant says that sec. 2.207 [3] of the Uniform Commercial Code (Texas Business & Commerce Code, sec. 2.207) applies to the contract here because appellant's purchase order was accepted by appellee and such purchase order became part of the contract. Appellant relies on such acceptance of the purchase order and the language in paragraph 7 [4] and paragraph 16 [5] on the back

2. "SPECIAL ISSUE NO. TWENTY TWO: Do you find from a preponderance of the evidence that Plaintiff made no objection to Purchase Order No. 69423 after it was received by him?
Answer 'He did not object' or 'He did object.'
ANSWER: He did not object."

3. "Sec. 2.207 Additional Terms in Acceptance of Confirmation
(a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(b) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(1) the offer expressly limits acceptance to the terms of the offer;
(2) they materially alter it; or
(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(c) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together

with any supplementary terms incorporated under any other provisions of this title. (59th Legis. Ch. 721, sec. 2–207.) Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, sec. 1."

4. "Performance of work under this purchase order may be terminated by Buyer at its option, in whole or in part at any time by delivery, or by mailing of a written notice of termination to Seller . . . After receipt of a notice of termination Seller shall, unless otherwise directed by Buyer, immediately terminate all work under this purchase order, Seller shall submit to Buyer promptly but no later than three (3) months from the effective date of termination, its termination claim . . . If the parties cannot by negotiation agree within a reasonable time upon the amount of fair compensation to Seller for such termination, Buyer, in addition to making prompt payment of amounts due for supplies delivered or services rendered prior to the effective date of termination, will pay to Seller the following amounts without duplication: (1) The price for all supplies or services which have been completed in accordance with this order and not previously paid for, (2) the Actual costs incurred by Seller which are properly allocable or apportionable under recognized commercial accounting practices to the terminated portion of this order . . . "

5. "This purchase order, together with any written instructions issued hereunder, contains the complete and final agreement

of such purchase order to constitute a written confirmation of the contract with additional terms which created a measure of damages limiting appellee on termination to "actual costs incurred by seller which are properly allocable * * * to the terminated portion of this order."

We disagree with these contentions. In the first place appellee was not shown by the record to be a merchant (a person who deals in goods) but a manufacturer and contractor. Secondly, the purchase order for 900 containers was written by appellant's employee on March 17, 1970, but dated back to January 7, 1970, and on the March date under the oral contract 138 containers had already been delivered by appellee to appellant. And appellant indicated by letter from J. K. Muir, manager of Purchasing, to appellee, dated April 9, 1970, that it did not consider the contract was for only 900 containers.[6] We have already pointed out appellee did not sign the purchase orders. The purchase order was not a confirmation of another contract, but, under this record, a request to deliver to appellant a certain number of shipping containers with the specifications and the price having been theretofore agreed upon. Therefore, the finding in Special Issue No.

22 that appellee did not object to the purchase order is immaterial.

By points 7 and 8, appellant says the trial court erred in disregarding Special Issues 14 and 15[7] by which the jury found appellee did not fulfill his obligation to mitigate his damages which would have been reduced by $10,000 had he done so.

Appellee's objection to Appellant's point 7 may be well taken in that the point complains that the disregarding by the trial court of Special Issues 14 and 15 "produced a result contrary to the clear intent of the jury." However, point 8 raises the question whether appellee was under a duty to mitigate his damages under the circumstances of this case, and whether the trial court should have reduced the judgment by $10,000 as found by the jury in Special Issue 15.

■ ■ The rule of avoidable consequence which imposes a duty on the person injured to minimize his damages by the exercise of ordinary care is recognized in Texas. Texas & Pacific Ry. Co. v. Mercer, 127 Tex. 220, 90 S.W.2d 557 (Tex. Com.App.1936); Reavis v. Taylor, 162 S.W. 2d 1030 (Tex.Civ.App., Eastland, 1942, writ ref., w. o. m.); 17 Tex.Jur.2d, Damages,

between Buyer and Seller, and no agreement or other understanding in any way purporting to modify the terms and conditions thereof shall be binding upon Buyer unless made in writing and signed by Buyer's authorized representative . . ."

6. "Due to the above two problems, KID 1970 production at this point in time is now projected at 3,000 vehicles with 2,000 of the total being produced between September and the 1st of January, 1971. Production releases will reflect shipment requirements and fabrication schedules reflecting these lower quantities.
 "While Kinetics International is disappointed in these production setbacks, our evaluation of the overall program is very optimistic and total production projections for the year 1971 and subsequent will be higher than originally thought during the 1969 time frame. We ask your continued cooperation with Kinetics International in supporting us with this pro-

gram for the next few months while we resolve these problems."

7. "SPECIAL ISSUE NO. FOURTEEN: Do you find from a preponderance of the evidence that Plaintiff fulfilled his obligation to mitigate his damages, if any he has suffered?
 You are instructed that a person who is damaged by the action of another is obligated by law to take reasonable steps to reduce the damages he has incurred, including making reasonable attempts to sell or otherwise dispose of raw materials, supplies or equipment which he has acquired.
 Answer 'He did' or 'He did not.'
 ANSWER: He did not.
 SPECIAL ISSUE NO. FIFTEEN: From a preponderance of the evidence, by what amount would Plaintiff's damages, if any, have been reduced if he had fulfilled his obligation to mitigate damages?
 Answer in dollars and cents.
 ANSWER: $10,000.00."

sec. 38, p. 115. In a breach of contract case the rule requires the injured party to use reasonable diligence to minimize his damages, but it does not require him to imperil his cause of action or to sacrifice a substantial right of his own. 17 Tex.Jur. 2d, Damages, sec. 39, p. 117; Guaranty Abstract Co. v. Denman, 209 S.W.2d 213 (Tex.Civ.App., Texarkana, 1948, n. w. h.).

■ ■ However, a defendant charged with breach of contract has the burden of establishing that the injured party could have minimized or mitigated his damages to some amount and failed to do so. Tortuguero Logging Operation, Limited v. Houston, 349 S.W.2d 315 (Tex.Civ.App., San Antonio, 1961, writ ref., n. r. e.); Brown Supply Co. v. Rushing, 361 S.W.2d 728 (Tex.Civ.App., Amarillo, 1962, n. w. h.); Employment Advisors, Inc. v. Sparks, 364 S.W.2d 478 (Tex.Civ.App., Waco, 1963, writ ref., n. r. e.); 17 Tex.Jur.2d, Damages, sec. 36, p. 114. A careful examination of the record here reveals that appellant failed to discharge the burden to show appellee could have mitigated his damages and the value of such mitigation. Appellee objected to the submission of Special Issue 15 on the ground "there is no evidence that would support a finding as to the amount, if any, by which the Defendant may have suffered by reason of any failure on the part of Plaintiff to mitigate his damages." We believe the objection was good.

Appelllant argues that there is no evidence in the record of any attempt by appellee to mitigate his loss except by placing a for sale sign in the window of a truck. Appellee Bateman was the only witness who testified about the building, equipment, tools, vehicles and raw materials he had to acquire to perform the contract and the cost of those items. He also testified about what items could be sold and which could not be, and the approximate value of the items. A careful review of Bateman's testimony reveals there was no evidence, direct or circumstantial, from which the jury could conclude that appellee could

have mitigated his damage by $10,000.00 if he was in fact or in law required to do so under such circumstances.

The judgment here is for loss of profits only; the alternative plea for out-of-pocket damages or for cost of tooling up was abandoned. Appellant had the burden to establish that appellee could have mitigated the damage if he were required to do so. Appellant failed to discharge such burden. Points 7 and 8 are overruled.

Points 9 and 10 are deemed to be without merit and are overruled.

Judgment of the trial court is affirmed.