**MEL-TEX VALVE, INC., Appellant,**

v.

**RIO SUPPLY COMPANY, INC., Appellee.**

**No. 01–85–0700–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 15, 1986.

Stuart M. Nelkin, Mende Snodgrass, Nelkin & Nelkin, Houston, for appellant.

Ben D. Tobor, Tudzin & Tobor, Houston, for appellee.

Before DUGGAN, DUNN and LEVY, JJ.

## OPINION

LEVY, Justice.

This is an appeal from a take-nothing judgment awarded the defendant/appellee, Rio Supply Company ("Rio"), in a breach of contract action.

Mel-Tex Valve, Inc. ("Mel-Tex"), filed suit against Rio alleging that it had breached an oral contract to purchase from Mel-Tex certain forged steel fittings for the amount of $40,000, which was to be secured by a letter of credit. Mel-Tex asserted that it had specially purchased the materials necessary to fill Rio's order, but Rio refused to accept delivery of the merchandise and never tendered a letter of credit. As a result, Mel-Tex sought to recover $40,000 in damages, plus all related expenses for shipping, storage, and attorney's fees.

Trial was before the court, and at the close of the plaintiff's case-in-chief, the defendant moved for judgment. The trial court granted the motion and ordered that Mel-Tex take nothing in this suit.

Appellant contends in its first point of error that the trial court erred in rendering a judgment premised upon findings not supported by the record, which are against the great weight of the evidence. Under this point, Mel-Tex seems to argue that none of the trial court's findings are supported by the evidence.

In its second point of error, appellant contends that the trial court erred in concluding that the purchase order and work order embodied in plaintiff's exhibits 1 and 2 do not conform to the Statute of Frauds, Tex.Bus. & Com.Code Ann. sec. 2.201 (Tex. U C C) (Vernon 1968).

In determining the propriety of a judgment rendered for the defendant at the conclusion of the plaintiff's case in a non-jury trial, the standard used should be the same as would be applicable to a motion for instructed verdict in a jury trial. *Goodale v. Goodale*, 497 S.W.2d 116, 118 (Tex.Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). Thus, the issue before this Court is whether the appellant offered sufficient competent evidence in support of his contention that Rio breached an oral contract enforceable under the Statute of Frauds. In deciding this issue, we will consider the evidence in the light most favorable to the appellant, disregard any conflicts in the testimony, and indulge every intendment reasonably deducible from the evidence in favor of the appellant and against the judgment. *Getto v. Gray*, 627 S.W.2d 437, 439 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Applying this standard of review to the evidence, we conclude that appellant failed to establish a prima facie case.

The record reflects that Avi Melawer, the owner of Mel-Tex, testified that he received a phone call from Bob Mitchell, a salesman for Rio, who placed a firm order to purchase valves at a quoted price of $40,000. Rio intended to resell the valves to a potential customer in Mexico. Neither Mitchell nor Melawer ever sent to the other a written purchase-order or memorandum confirming the proposed sale. However, Mitchell did generate an *internal* memorandum on an unsigned purchase-order form. This pre-printed purchase-order form contained a description of the quantity and price of the goods allegedly ordered by Rio, and a pre-printed signature space shown as "Rio Supply Company by _____." It was not transmitted to Mel-Tex.

Melawer further testified that although he never received written confirmation of the sale, he did receive, at his request, a "purchase-order number" from Mitchell to assign to the order approximately two

weeks after the order was placed. The record reflects that the purchase-order number given to Melawer was the same number found on the unsigned purchase-order form prepared by Mitchell.

Approximately four weeks after Rio allegedly placed its order, Mel-Tex tendered the valves for delivery. However, Rio rejected delivery of the valves, claiming that the sale of the valves was conditioned upon Rio receiving a firm written commitment, together with a letter of credit guaranteeing payment, from its potential customer in Mexico. Melawer denied that he had ever been told that Rio was conditioning its purchase of the materials on the arrival of a letter of credit from its Mexican customer.

The enforceability of an oral contract is governed by Tex.Bus. and Com.Code sec. 2.201(a), which provides as follows:

Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

The word "signed" is defined under Tex. Bus. and Com.Code section 1.201(39) as including any symbol executed or adopted by a party with the present intention to authenticate a writing. The comment to section 1.201(39) provides that the court must use common sense and commercial experience in deciding whether a writing has been "signed." In *LTV Aerospace Corporation v. Bateman*, 492 S.W.2d 703, 707 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r. e.), the court held that the "issuing of a purchase order for 900 crates or containers, unsigned by appellee against whom it is sought to be enforced, is not such a writing as will satisfy [2.201] subsection

(a)." Unlike the present case, the seller in *LTV Aerospace* actually received the written purchase-order form.

Here, the purchase-order was not signed by Rio and was never sent to Mel-Tex. Mel-Tex's own witness, Leon Lozada, testified that he would sometimes first require written confirmation of a purchase-order, even if a prospective customer had orally given him a purchase-order number, before ordering any materials, if a large order was involved. Under these circumstances, the trial court was correct in concluding that appellant had not proven the existence of a signed writing evidencing the contract of sale under section 2.201(a). *See LTV Aerospace*, 492 S.W.2d at 707.

■ The appellant also failed to show the existence of a contract under section 2.201(c)(1), which provides as follows:

(c) A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable

(1) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement.

Under this section, an oral contract for the sale of goods is enforceable if the goods are specially manufactured for the buyer, and not suitable for sale to others in the ordinary course of business. *See LTV Aerospace*, 492 S.W.2d 703, 706.

In the case at bar, Avi Melawer testified that some of the equipment he ordered for Rio were "fast-moving" items, some were "slow-moving" or "obsolete" items, and that he did not expect to sell any of the "slow-moving" items.

Mel-Tex offered into evidence a list of the items allegedly ordered by Rio. The "slow-moving" items were circled. An examination of the list shows that some of

the types of merchandise which were allegedly "slow-moving" had already been sold; e.g., the size ¾ idem, the size 1 idem, and the size 2 idem. Moreover, Melawer testified that he had ordered additional numbers of the "slow-moving" items for his personal stock in order to get a better price on the shipment.

Thus, the evidence offered by Mel-Tex, and Melawer's own testimony, revealed that the merchandise was not exclusively, or even specially, manufactured for the buyer, and that most, and perhaps all, of the merchandise, although slow moving, was suitable for sale to others.

Based on these facts, we conclude that appellant did not establish its cause of action because it failed to prove the existence of an oral contract enforceable under the Statute of Frauds. Accordingly, it is unnecessary to discuss the appellant's points of error regarding the sufficiency of the evidence to support the court's findings of fact and conclusions of law.

The judgment of the trial court is affirmed.