Affirmed and Memorandum Opinion filed August 21, 2007








Affirmed and Memorandum Opinion filed August 21, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01283-CV

____________

 

JOSEPHINE ALDRIDGE, Appellant

 

V.

 

JERRY R. AVARA, Appellee

 



 

On Appeal from the County
Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 802,022

 



 

M E M O R A N D U M   O P I N I O N

In three issues, appellant Josephine Aldridge appeals from
the trial court=s judgment in favor of appellee Jerry R.
Avara for breach of contract regarding the sale of a motor home.  We affirm.

I.  Factual and Procedural Background








This appeal arises from a dispute over the alleged sale of
a motor home by Aldridge to her son, Avara.  Aldridge purchased the motor home
for about $32,000 as a place to live after Tropical Storm Allison rendered her
house temporarily uninhabitable.  According to Aldridge, when she repaired her
house, she sought to sell the motor home, placing a Afor sale@ sign in its window. 
In August 2002, Aldridge testified that Avara approached her about purchasing
the motor home, and she agreed to sell it to him for $31,000 in cash.  Although
she maintained he agreed to pay the entire amount up front, she initially
accepted a $5000 personal check from him and allowed him to take possession of
the motor home with the understanding he would pay the remaining amount in the
next few days after he Amov[ed] some funds around.@  The check is
signed by Avara and its Afor@ line reads Adown on Motor
home.@  The check also
contains a handwritten notation in the corner reading ADutchman motor
home@ and a handwritten
notation of a calculation reading A3100.00 [minus]
500.00 [equals] 2600.00 Balance.@  Aldridge claims
Avara wrote the Adown on Motor home@ notation and
that, after receiving the check from Avara but while still in his presence, she
wrote the calculation, mistakenly writing A3100.00@ instead of A$31,000.00@ as the beginning
balance.  The check reflects, and Aldridge conceded on cross examination, that
Avara=s initials do not
appear next to the calculation.    

Thereafter, on September 11, 2002, rather than paying
Aldridge the balance, Avara gave her a $1000 check containing a notation
reading AMotor Home bal
25000.00.@  Avara subsequently made nine similar $1000 payments
in personal and cashier=s checks to Aldridge on roughly a monthly
basis, each containing a notation reflecting the current balance as adjusted
after each payment, leaving a final balance of $17,000.  The record does not
establish who wrote these notations.  On January 15, 2003, after Avara had paid
$9000, Aldridge transferred free and clear title to the motor home to Avara,
claiming she did so without payment of the full balance so Avara could Atake the title to
the bank, and get the money on the motor home [to pay her].@  Aldridge
received the last $1000 payment from Avara in June 2003, and she claimed he
lived in the motor home for six months thereafter.








Avara disputed Aldridge=s characterization
of the transaction and her version of the events.  He contended that Aldridge
approached him seeking money to help pay her house mortgage until she received
payment of an insurance claim.  She also told him she needed to remove the motor
home from her property upon orders from her homeowner=s association.  He
denied agreeing to purchase the motor home for $31,000.  He testified, rather,
that the $5000 Adown payment@ was a loan made
to his mother on the condition that he could sell the motor home and split the
profits with her.  Avara also denied writing Adown on Motor home@ on the $5000
check and explained he loaned Aldridge the subsequent $1000 payments on her
requests for more money.  As to the transfer of title, Avara maintained he
agreed to purchase insurance on the motor homeCwhich would soon
lapse and which Aldridge could not affordCand needed title
to do so.  

Additionally, Avara testified that, shortly after taking
possession of the motor home, he took it on a 100-mile round trip to
Nacogdoches to visit his terminally-ill father.  He also initially admitted
taking a trip in the motor home to League City, Texas but later testified he
took only one trip.  On the trip back from Nacogdoches, Avara claimed he
discovered several major defects with the motor home and called Aldridge
immediately to express his dissatisfaction.  Avara alleged he spent
approximately $4000 to repair these defects and explained in discovery
responses that he did so to make the motor home Afit for sale.@[1]

In September 2003, after Avara stopped making payments,
Aldridge sued Avara for breach of contract.  Avara generally denied and
responded that the statute of frauds barred enforcement of any alleged oral
agreement for purchase of a motor home valued over $500.  Avara also brought
counterclaims for Amoney had and received@ and breach of the
alleged oral loan agreement, seeking $19,000 in damages, which is the total
amount he allegedly loaned Aldridge and spent to repair the motor home.[2] 









After a bench trial, the trial court denied all parties= claims for relief
and ordered that Avara retain title and ownership to the motor home.  The court
entered the following relevant findings of fact:  (1) Avara agreed to keep the
motor home for Aldridge to solve her problem with the homeowner=s association, (2)
no written agreement or other contemporaneous memorialization existed between
Aldridge and Avara regarding the sale or ownership of the motor home, and (3)
Avara paid Aldridge a total of $14,000 between August 2002 and May, 2003.  The
court entered the following conclusions of law:  (1) Aldridge failed to prove
by a preponderance of the credible evidence that Avara had agreed to buy the
motor home for $31,000 and (2) Aldridge failed to prove by a preponderance of
the credible evidence that there was any agreement between the parties with
regard to the sale or ownership of the motor home.  

Aldridge now appeals, complaining that the evidence is
legally and factually insufficient to support the finding that no contract for
sale of the motor home existed and that the trial court erred in excluding on
hearsay grounds a letter written by Avara=s wife offered to
substantiate the existence of the contract.

II.  Analysis

A.  Legal Sufficiency








In issue one, Aldridge claims the evidence is legally
insufficient to support the trial court=s findings that no
contract for sale of the motor home existed either as a written contract
satisfying the statute of frauds or as an oral contract under the partial
performance exception to the statute of frauds.  We review a trial court=s findings for
legal and factual sufficiency under the same standards applied in reviewing
evidence supporting a jury=s answer.  See Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  In a legal sufficiency or no-evidence review,
we determine whether the evidence would enable reasonable and fair‑minded
people to reach the finding under review.  See City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).  We must consider the evidence in the light
most favorable to the judgment, crediting favorable evidence if reasonable
jurors could and disregarding contrary evidence unless reasonable jurors could
not.  See id. at 807.  When a party attacks the legal sufficiency of an
adverse finding on an issue on which it has the burden of proof, the party must
demonstrate on appeal that the evidence establishes, as a matter of law, all
vital facts in support of the issue.  See Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  In reviewing a Amatter of law@ challenge, the
reviewing court must first examine the record for evidence that supports the
finding, while ignoring all evidence to the contrary.  Id.  If there is
no evidence to support the finding, the reviewing court will then examine the
entire record to determine if the contrary proposition is established as a
matter of law.  Id.   The issue should be sustained only if the contrary
proposition is conclusively established.  See id. at 241B42.  Evidence is
conclusive only if reasonable people could not differ in their conclusions. 
See Wilson, 168 S.W.3d at 816.  Evidence is no more than a scintilla when
it is so weak as to do no more than create a mere surmise or suspicion of its
existence.  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). 
The factfinder is the sole judge of the credibility of the witnesses and the
weight to give their testimony.  See Wilson, 168 S.W.3d at 819.      

Because Aldridge had the burden to establish a breach of
contract, we first examine the record for evidence supporting the trial court=s adverse finding
that no contract for sale of the motor home existed.  To this end, Aldridge
contends we must disregard Avara=s testimony and
discovery responses denying the agreement to purchase the motor home and his
testimony asserting he agreed only to loan Aldridge money because this evidence
shows his subjective intent, and we must focus only on objective standards of
what the parties said and did to determine whether the parties consented to the
terms of an agreement.  Therefore, Aldridge concludes, since we cannot consider
this evidence, no evidence supports the trial court=s finding that no
contract for the sale of the motor home existed. 








We agree that in generally determining whether parties
mutually assented to an agreement, we must focus on their communications and
surrounding acts and disregard unexpressed subjective intent.  See Angelou
v. African Overseas Union, 33 S.W.3d 269, 278 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  However, we disagree with Aldridge=s characterization
of Avara=s statements as
simply describing his subjective state of mind.  At trial, Avara testified
about his discussions with Aldridge in August 2002 concerning their agreement
regarding the motor home.  In explaining Aldridge=s concern that her
homeowner=s association was requiring her to move the motor home
off her property, he testified that he Asaid [he] could
take [the motor home]@ to his property.  Avara also repeatedly
testified as to what Aldridge said to him during their meeting, including how
much she paid for the motor home, that it was in terrific shape, and that Avara
would have no trouble selling it.  Therefore, Avara=s testimony was
not simply about his subjective impressions or intent but rather about his
communications with Aldridge during their meeting.  Compare Fuqua v. Fuqua,
750 S.W.2d 238, 245 (Tex. App.CDallas 1988, writ denied) (holding that
appellant=s uncommunicated, subjective intention not to pay his
brother rent did not preclude finding of valid oral contract where appellant
admitted telling his brother he would pay rent but testified he said so only to
stop his brother=s badgering).  As such, we disagree with
Aldridge=s suggestion that
we should disregard the evidence regarding Avara=s meeting with
Aldridge about the motor home. 








After considering this and other evidence in the record, we
conclude there is legally sufficient evidence to support the trial court=s finding that no
written or oral contract for sale of the motor home existed.  Enforceable
contracts require a meeting of the minds, and where such is contested,
determination of the existence of a contract is a question of fact.  See
Angelou, 33 S.W.3d at 278.  In his testimony and discovery responses, Avara
denied agreeing to purchase the motor home.  Avara also explained he gave
Aldridge the $5000 Adown payment@ as a loan, and
the motor home and/or proceeds from the sale of the motor home were to serve as
collateral.  He further explained that the subsequent $1000 payments to Aldridge
constituted additional loans she requested while awaiting an insurance
payment.  Although Aldridge testified differently regarding the nature of the
agreement and the payments Avara made, the trial court was free evaluate the
witnesses= credibility and assign weight to their testimony.  See
generally Wilson, 168 S.W.3d at 819 (noting that if parties to oral
contract testify to conflicting terms, reviewing court must presume terms were
those asserted by winner).  Viewing the evidence in the light most favorable to
the judgment, we find there is legally sufficient evidence indicating the
parties failed to mutually assent to a contract for sale and thus supporting
the trial court=s finding that no contract for the sale of
the motor home existed.  Accordingly, we need not address contrary evidence
under Aldridge=s legal sufficiency point.  See Dow Chem. Co.,
46 S.W.3d at 241; see, e.g., Watts v. BHP Billiton Petroleum
(Americas), Inc., No. 14‑05‑00480‑CV, 2006 WL 2669350, at
*3 (Tex. App.CHouston [14th Dist.] Sept. 19, 2006, pet. denied)
(mem. op.).

We overrule issue one.  

B.  Factual Sufficiency

In issue two, Aldridge claims the evidence is factually
insufficient to support the trial court=s finding that no
contract for sale of the motor home existed.  In a factual sufficiency review,
we consider all the evidence supporting and contradicting the finding.  Plas‑Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  When a party
attacks the factual sufficiency of an adverse finding on an issue on which he
has the burden of proof, he must demonstrate on appeal that the adverse finding
is against the great weight and preponderance of the evidence.  Dow Chem.
Co., 46 S.W.3d 237 at 242.  We set aside the finding only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Id.  In doing so, the court of appeals must detail the evidence
relevant to the issue and state in what regard the contrary evidence greatly
outweighs the evidence in support of the judgment.  Id.  The factfinder
is the sole judge of the weight and credibility of the witnesses= testimony, and we
may not substitute our judgment for that of the factfinder=s, even if we
would have reached a different result on the evidence.  See Manon v. Tejas
Toyota, Inc., 162 S.W.3d 743, 753 (Tex. App.CHouston [14th
Dist.] 2005, no pet.); In re G.A.T., 16 S.W.3d 818, 829 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  








Aldridge first contends the evidence that no contract for
sale existed is greatly outweighed by evidence that a written contract for sale
existed satisfying the statute of frauds.  Under the UCC, a contract for the
sale of goods for the price of $500 or more is not enforceable absent some
writing evidencing such a contract that is signed by the party against whom
enforcement is sought and that specifies a quantity.  See Tex. Bus. & Com. Code Ann. ' 2.201(a) &
cmt. 1 (Vernon 1994); Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925
S.W.2d 565, 570 (Tex. 1996).  As evidence of a sufficient writing, Aldridge
points to Avara=s $5000 personal check, which contains his
signature, the notation Adown on Motor home@on the Afor@ line, the
notation ADutchman motor home,@ and a calculation
showing the $5000 payment subtracted from a figure of A3100.00@ (which, according
to Aldridge=s testimony, should have been A$31,000@), leaving a
balance of A2600.00@ (which Aldridge
similarly noted should have been A$26,000@).  Aldridge also
cites the nine $1000 personal and cashier=s checks bearing
the declining balance calculations (on which the balance begins at $25,000) and
the title to the motor home bearing Avara=s name.  These
documents, Alrdidge argues, satisfy the statute of frauds= writing
requirement, as they demonstrate a quantity of one motor home, contain Avara=s signature, show
a price of $31,000, and otherwise evidence a contract for sale.      








At trial, the parties testified to greatly varying
circumstances surrounding the documents= creation and
transferal, and, thus, whether the writing sufficiently Aafford[s] a basis
for believing that the offered oral testimony rests on a real transaction@ turns largely on
the credibility of the parties= testimony.  See Tex. Bus. & Com. Code Ann. ' 2.201 cmt. 1. 
Avara maintained he gave the $5000 check to Aldridge as a loan and denied
Aldridge=s claim that he
wrote Adown on Motor home@ on the check=s Afor@ line.  Moreover,
Aldridge admitted writing the calculation showing the declining balance on the
check after Avara had signed and given it to her, and, although she maintained
she did so in his presence, she also admitted Avara did not initial the
notation.  Further, Avara explained the $1000 checks constituted
subsequent loans that Aldridge requested, and the record does not establish who
wrote the calculations showing the declining balances on these checks.  Cf.
Mel‑Tex Valve, Inc. v. Rio Supply Co., 710 S.W.2d 184, 186 (Tex. App.CHouston [1st
Dist.] 1986, no writ) (finding purchase order for alleged oral contract for
sale of goods failed to satisfy statute of frauds because buyer, in addition to
not signing order, generated order internally and failed to transmit order to seller). 
Additionally, although Aldridge claimed she transferred title to Avara so he
could secure funds from the bank, Avara explained he needed title to purchase
insurance.  The trial court was free to assess the credibility of the parties= respective
accounts, and we cannot substitute our judgment for that of the trial court.  See
Manon, 162 S.W.3d at 753.  Reviewing the documents in light of Avara=s explanations
surrounding their creation and transferal, we cannot say the evidence that a
written contract for sale of goods satisfying the statute of frauds existed
greatly outweighs the evidence that no such contract existed.  See Martco,
Inc. v. Doran Chevrolet, Inc., 632 S.W.2d 927, 928 (Tex. App.CDallas 1982, no
writ) (relying in part on buyer=s testimony and surrounding circumstances
indicating that memo did not confirm existing sales contract but constituted
only offer for future agreement in holding that memo failed to satisfy statute
of frauds).[3]









Aldridge further contends the evidence that no contract for
sale existed is greatly outweighed by evidence that the parties formed a valid
oral contract under the partial performance exception to the statute of
frauds.  The UCC provides that a Acontract which
does not satisfy the [writing] requirements of [section 2.201(a)] but which is
valid in other respects is enforceable . . . with respect to goods for which
payment has been made and accepted or which have been received and accepted
(Section 2.606).@  See Tex. Bus. & Com. Code Ann. ' 2.201(c)(3) &
cmt. 2.  Thus, to establish an enforceable contract in this context, a party must
prove (1) a valid oral contract existed and (2) acceptance under section
2.201(c)(3).  See Wilson v. Remmel Cattle Co., 542 S.W.2d 938, 941 (Tex. Civ. App.CAmarillo 1976, writ ref=d n.r.e.); see also RM
Engineered Prods., Inc. v. UOP, Inc., 793 F. Supp. 1373, 1384 (W.D. La.
1991) (applying Texas law).  A contract for sale of goods may be established by
both parties= conduct recognizing the existence of such contract.  See
Tex. Bus. & Com. Code Ann.
' 2.204 (Vernon
1994).  Whether a contract is implied from the facts and circumstances is a
question for the factfinder.  See Preston Farm & Ranch Supply, Inc. v.
Bio‑Zyme Enters., 625 S.W.2d 295, 295 (Tex. 1981); Fraud‑Tech,
Inc. v. Choicepoint, Inc., 102 S.W.3d 366, 385B86 (Tex. App.CFort Worth 2003,
pet. denied).  AAcceptance of the goods occurs when the
buyer . . . does any act inconsistent with the seller=s ownership. . . .@  Tex. Bus. & Com. Code Ann. ' 2.606(a)(3)
(Vernon 1994).  For example, physical possession and exercise of dominion over
the goods may support a finding of acceptance of goods.  See Ho v. Wolfe,
688 S.W.2d 693, 696 (Tex. App.CAmarillo 1985, no writ). 

Aldridge contends her and Avara=s conduct, along
with the checks and the parties= Rule 11 agreement demonstrate a valid
oral contract for the sale of the motor home.  Aldridge also argues the
following actions by Avara were inconsistent with Aldridge=s ownership of the
motor home and thus demonstrate acceptance pursuant to the oral contract:  (1)
taking possession, (2) driving to Nacogdoches to visit his terminally-ill
father, (3) making payments totaling $14,000 with instruments showing declining
balances on the alleged $31,000 price, and (4) obtaining title in January 2003
while continuing to make payments.








We must review this undisputed evidence in light of all
other evidence supporting and contradicting the judgment, namely, the parties= opposing
explanations for such conduct, offered through testimony, discovery responses,
and their attorneys= correspondence.  Avara explained he took
possession of the vehicle both to help Aldridge resolve her problem with the
homeowner=s association and so he could sell the vehicle
pursuant to their loan agreement.  Also, as noted above, Avara testified the
payments he made constituted loans and that he needed title to the motor home
to buy insurance.  Moreover, Avara admitted he spent at least $1000 to repair
the motor home after taking possession, but he explained in discovery responses
he did so to make the vehicle fit for sale.  Avara=s testimony was
not substantially impeached at trial, and he stated that he did not assent or
take such action pursuant to a contract for sale of the motor home.  See
Angelou, 33 S.W.3d at 278.  On the other hand, Aldridge maintained that
Avara took the above actions pursuant to a contract for sale.  She further
offered Avara=s brother=s testimony that
Avara admitted purchasing the motor home from Aldridge; however, on
cross-examination, Avara=s brother was impeached by admitting he
does not speak to his brother or Acare for him as a
human being.@  She also emphasized Avara=s trip to
Nacogdoches, and Avara did not explain how the trip related to a contract for
sale of the motor home.   

As with the analysis of whether a written contract existed,
whether the evidence established that an oral contract for sale existed and
whether acceptance occurred largely turns on a resolution of Aldridge=s or Avara=s contrary
explanations for the parties= conduct. The trial court was free to
resolve such conflicts in the evidence, and we will not substitute the trial
court=s judgment with
our own.  As such, based on the entire record, we do not find the evidence that
an oral contract for sale existed under the partial performance exception to
the statute of frauds greatly outweighs the evidence that no contract for the
sale of the motor home existed. 

We overrule issue two.  

C. 
Exclusion of Evidence

In issue three, Aldridge contends the trial court erred in
excluding a letter purportedly from Avara=s wife=s to Aldridge, in
which she references Amonthly payments@ for and the
balance due on the motor home, under the statement-against-interest exception
to the hearsay rule.  See Tex. R.
Evid. 803(24). 








We initially address whether Aldridge has waived her
evidentiary issue.  To preserve error for our review, an appellant=s complaint on
appeal must comport with its objection in the trial court.  See Tex. R. App. P. 33.1(a); Taylor v.
Am. Fabritech, Inc., 132 S.W.3d 613, 621 & n.21 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied).  At trial, in response to Avara=s hearsay
objection to the letter, Aldridge explained that she Amay call [Avara=s wife] as a
witness@ and that the
letter Ais a [sic] prior
inconsistent testimony from what I expect her to testify to.@  Aldridge did not
respond to Avara=s hearsay objection on the ground the
letter constituted a statement against interest under Rule of Evidence 803(24)
but, rather, appeared to respond on the ground the letter constituted a prior
inconsistent statement under Rule of Evidence 801(e)(1)(A).  Compare Tex. R. Evid. 803(24) (AA statement which
was at the time of its making so far contrary to the declarant=s pecuniary or
proprietary interest, or so far tended to subject the declarant to civil or
criminal liability . . . that a reasonable person in declarant=s position would
not have made the statement unless believing it to be true.@), with Tex. R. Evid. 801(e)(1)(A) (AA statement is not
hearsay if:  . . . the statement is . . . inconsistent with the declarant=s testimony, and
was given under oath subject to the penalty of perjury at a trial, hearing, or
other proceeding except a grand jury proceeding in a criminal case, or in a
deposition . . . .@).  Accordingly, because Aldridge=s complaint to
this court differs from her complaint to the trial court, she has failed to
preserve this error for our review.  See, e.g., McKee v. McNeir,
151 S.W.3d 268, 270 (Tex. App.CAmarillo 2004, no pet.) (finding proponent
of evidence waived complaint that trial court erred in excluding evidence
because proponent=s stated grounds for admission at trial
failed to comport with grounds raised on appeal). 

To the extent Aldridge complains that the trial court erred
in failing to admit the letter in rebuttal, we also find Aldridge waived this
complaint because she failed to reoffer the letter for rebuttal purposes.  AError is waived if
the offering party fails to reoffer evidence for a limited purpose after it has
been excluded pursuant to a general objection.@  Bean v.
Baxter Healthcare Corp., 965 S.W.2d 656, 660 (Tex. App.CHouston [14th
Dist.] 1998, no pet.).  The record reveals that the trial court excluded the
letter for purposes of direct testimony and told Aldridge she could seek to
reintroduce the letter during rebuttal of Avara=s wife.  Because
Aldridge never called Avara=s wife or otherwise sought to reintroduce
the letter for rebuttal purposes,[4]
she waived this complaint on appeal.     

We overrule issue three.  








III.  Conclusion

We conclude the evidence is legally and factually
sufficient to support the trial court=s finding that no
contract for sale of the motor home existed.  We additionally conclude Aldridge
waived her complaint regarding the trial court=s evidentiary
exclusion.  Accordingly, we affirm the trial court=s judgment.   

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 21, 2007.

Panel consists of
Justices Yates, Edelman, and Frost.









[1]  Avara=s
discovery responses were admitted as evidence at trial. 





[2]  In an attempt to settle the lawsuit, the parties
entered into a Rule 11 agreement on January 3, 2005.  The agreement provided
that the parties would sell the motor home and that Aldridge would receive 70%
of the profits and Avara would receive 30%.  The parties ultimately failed to
perform under the agreement and thereafter continued to pursue this
litigation.  





[3]  As additional evidence of a writing satisfying the
statute of frauds, Aldridge cites the parties= Rule 11 Agreement, which states, AThe
[motor home] shall remain intact with the equipment furnished as sold by
Josephine Aldridge to Jerry Avara . . . . [T]he [motor home] will be turned
over to Houston RV in the same or similar condition as when [Aldridge] sold the
RV to [Avara].@  Aldridge claims this post-litigation agreement
constitutes a Asubsequent memorialization@ of the contract for sale of the motor home.  Assuming
without deciding that this agreement may constitute a Awriting@
under the UCC statute of frauds, we nonetheless do not find that this
agreement, by virtue of its passing reference to a sale of the RV, or the other
offered documents greatly outweigh the evidence that no written contract for
sale of the motor home existed.





[4]  Aldridge=s
contention that the trial court Anever
allowed for rebuttal [by] concluding the trial after [Avara] rested@ is unavailing because the record shows that, at the
close of Avara=s evidence, the trial court asked both parties if
there was Aanything else,@ to
which Aldridge responded, ANo, judge.@